## POWELL v. SHERWOOD, Receiver, Appellant.

### In Banc, May 21, 1901.

1. **Bill of Exceptions:** EXTENSION. The circuit court has no authority to extend the time for the filing of a bill of exceptions after the time formerly granted within which to file the bill has expired. And a bill filed in pursuance to such order, will not be considered on appeal.

2. **Pleading:** DEFECTIVE PETITION: SUPPLIED BY ANSWER. Allegations which should have been stated in the petition and were not .(such as, in a negligence case, that the injury was not within the ordinary risk of plaintiff's employment), may be supplied by the answer pleading them as defenses, and the joining of issue thereon by the reply.

3. **Fellow Servant's Act:** RECEIVERS LIABLE. The fellow servant law of 1897, entitled "An Act to define the liabilities of railroad corporations in relation to damages sustained by their employees," etc., and defining the term "railroad corporations" to "mean all corporations, companies or individuals owning or operating a railroad, or which may hereafter own or operate, any railroad in this State," makes a receiver of a railroad, appointed by a United States court, liable to damages for injury to an employee, to the same extent as the corporation would have been had no receiver been appointed to take charge of its affairs. The real defendant in interest in such case is not the receiver, but the corporation represented by the receiver.

4. ————: CONSTITUTIONAL. Said fellow servant law is constitutional. It is not to be condemned as class legislation, as defined in the Missouri Constitution, nor as denying equal protection before the law, as meant by the use of those words in the Federal Constitution, simply because it singles out railroad companies and imposes on them a burden not imposed on other common carriers or employers.

Appeal from Franklin Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*Adiel Sherwood* for appellant.

(1)   The record proper, that is, the petition, answer and reply, show that the intestate came to his death after the Act of February 9, 1897, took effect, and the facts stated show that but for the provision in said law, plaintiff would have no right of recovery.   The question of the constitutionality of said act is therefore before the court irrespective of the question whether the bill of exceptions was properly filed.   The Act of February 9, 1897, is illegal, unconstitutional, and void, because:   (a)   Said act attempts to subdivide a class, to-wit, employers of labor, and carve out of that class a separate class which only is to be made liable under the terms of the act, to-wit, railroad companies, as such, employers of labor a greater burden than is at the same time placed upon other employers of labor under similar and exactly the same circumstances, and, thereby, deny to railroad companies the equal protection of the laws, guaranteed by amendment 14 to the Constitution of the United States.   (b)   The act is a denial of due process of law, under amendment 5 of the Constitution of the United States and under section 30 of article 2 of the Missouri Constitution.   (c)   The act is illegal, unconstitutional and void, because one class of persons in the State, to-wit, railroad companies, have by the terms of the act a greater burden and charge placed upon them at the same time and under the same circumstances than upon other persons of the same class, to-wit, employers of labor, and all contrary to the provisions of the fourteenth amendment to the Constitution of the United States.   State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 139; State v. Goodwill, 38 W. Va. 183; State v. Coal & Coke Co., 33 W. Va. 189; Millett v. People, 117 Ill. 302; Godcharles v. Wagenan, 113 Pa. St. 437; Kuhn v. Common Council, 70 Mich. 634; Aukow v.

Numan, 5 Sawyer, 552; Vick Wo v. Hopkins, 118 U. S. 356; In re Quong Wo, 13 Fed. Rep. 229; Frorer v. People, 31 N. E. 395; Ward v. Floyd, 48 Cal. 51; In re Ah Chong, 2 Fed. Rep. 737; Pearson v. City of Portland, 69 Me. 269; Waly's Heirs v. Kennedy, 2 Yerg. 554; Lewis v. Wood, 3 Me. 326; Com. v. Johnson, 78 Ky. 509; Turke v. Janeville, 28 Wis. 464; Leffert v. Railroad, 38 N. W. Rep. 660; Milan v. Railroad, 38 N. W. Rep. 289; Zeigler v. Railroad, 58 Ala. 594; Railroad v. Lackie, 78 Ill. 55; Railroad v. George, 21 Fla. 669; In re Jacobs, 98 N. Y. 98; Com. v. Bacon, 13 Bush (Ky.), 210, s. c., 26 Am. Rep. 189; Pierce v. Kimball, 9 Me. 54; s. c., 23 Am. Dec. 537; State v. Walsh, 136 Mo. 400; Railroad v. Ellis, 165 U. S. 150. (d) Section 4 of the act which prohibits any contract in violation of its provisions is undoubtedly void, being an infringement of the liberty of contract. State v. Loomis, 115 Mo. 307; Shaver v. Railroad, 71 Fed. 937. It seems clear enough that the Legislature would not have passed the act with section 4 omitted, and hence, the whole act must fail. (2) The act does not apply to a receiver operating a railroad in the State of Missouri, and this exemption appears at large upon the record proper. Turner v. Cross, 18 S. W. 578; Lamphear v. Buckingham, 33 Conn. 238; Dillingham v. Blake, 32 S. W. 77; Burke v. Dillingham, 60 Fed. 729; Campbell v. Cook, 86 Texas, 630, 26 S. W. 486; Trust Co. v. Railroad, 69 Fed. Rep. 353; Henderson v. Walker, 55 Ga. 481; Thurman v. Railroad, 56 Ga. 376; Youngblood v. Comer, 99 Ga. 152; Brown v. Comer, 97 Ga. 801; Robinson v. Huidekoper, 98 Ga. 306; Clyde v. Railroad, 59 Fed. Rep. 394; Baltimore Co. v. Atlanta Co., 69 Fed. 358.

*James Booth* for respondent.

(1) The bill of exceptions in this cause was filed in vacation in March, 1898, and under the repeated rulings of this court, constitutes no part of the record. (2) The record proper only being before this court, it is impossible to say from the face of the petition that the deceased was injured by the negligence of a fellow servant as defined in the Missouri fellow servant act (Laws 1897, p. 96). (3) The issues in this case, under proper instructions, were all submitted to the jury, which was found then against appellant. This is conclusive. Jefferson v. Life Assn., 69 Mo. App. 134; State ex rel. v. Hart, 89 Mo. 590; Newland College v. Bork, 44 Mo. App. 19; Henry v. Railroad, 109 Mo. 488; State v. Richardson, 117 Mo. 586. (4) Under the plain wording of the statute defendant is made liable for all damages sustained by any "agent or servant while engaged in the work of operating such railroad." And the act applies to a receiver operating a railroad as such. Fullerton v. Fordyce, 121 Mo. 1; 5 Thompson on Corporations, secs. 7151, 7159; Farrell v. Union Trust Co., 177 Mo. 475. (5) The act is not subject to any of the objections urged against it by appellant. It applies to all of a class, and hence, is not special or class legislation. Phillips v. Railroad, 86 Mo. 540; State ex rel. v. Woodford, 121 Mo. 61; State ex rel. v. Marion County Court, 128 Mo. 427; State v. Jennings, 98 Mo. 493. (5) A prospecting statute or constitutional ordinance, which abrogates the rule of the common law under which a railroad company is not liable to one of its servants for an injury sustained by him through the negligence of a fellow servant engaged in the same common employment, does not deprive the railroad company of its property without due process of law, nor deny to it the equal protection of the laws, nor create a discrimination against railroad companies within the prohibition of the Constitution of the State; but is a police regulation,

such as is competent for the Legislature of a state, in the absence of other restraints in its Constitution, to make. Such statutes, it is perceived, are merely intended to abolish the rule of judge-made law, not properly called a rule of the common law, for it is not more than fifty years old, making one servant remediless against the common master, where he received an injury through the negligence of a fellow servant engaged in the same common employment. 4 Thompson on Corporations, sec. 5454, p. 4186; Railroad v. Mackey, 127 U. S. 205; Railroad v. Herrick, 127 U. S. 210; Railroad v. Mackey, 33 Kan. 298.

*Morton Jourdan* also for respondent.

(1) The sufficiency of plaintiff's petition is unchallenged. There is no contention that there is error in the record proper. Upon the rule that the bill must be filed at the term or within the time allowed by the court during the term or before the time allowed has expired, defendant criminals have been legally executed, others incarcerated and the rights of property to the value of thousands of dollars determined. Dorman v. Coon, 119 Mo. 69; Fulkerson v. Murdock, 123 Mo. 292; Dansforth v. Railroad, 123 Mo. 196; Linahan v. Barley, 124 Mo. 561; State v. Dillon, 132 Mo. 183; State v. Clark, 119 Mo. 426; State v. Scott, 113 Mo. 559; State v. Apperson, 115 Mo. 470; State v. Seaton, 106 Mo. 198; Burdoin v. Town, 116 Mo. 358; State v. Mosley, 116 Mo. 545; State v. Harris, 121 Mo. 445.

PER CURIAM: The following opinion by *Valliant, J.,* in Division One, is adopted as the opinion of the Court in Banc. *Burgess, C. J., Robinson, Brace* and *Gantt, JJ.*

concur; *Marshall, J.*, concurs in all except paragraph 1; *Sherwood, J.*, has the privilege of filing a separate opinion hereafter.

VALLIANT, J.—Suit for damages for the alleged negligent killing of plaintiff's husband by defendant's servants.

Petition is to the effect that defendant is the receiver, appointed by United States Circuit Court, in charge of and operating the St. Louis, Kansas City and Colorado railroad; that on July 31, 1897, plaintiff's husband was in the service of defendant in the capacity of brakeman on a freight train of that railroad, and was thrown off the train and killed by reason of the negligence of defendant's "agents, officers and servants," in charge and control of the train, in suddenly and without warning, starting the train with a jerk, etc., specifying with particularity the alleged negligent act.

The answer admitted the capacity in which the defendant was sued, and denied all other allegations of the petition. Then it pleaded three affirmative defenses, viz.: first, that the accident was incident to and one of the known hazards of the employment; second, that plaintiff's husband neglected to take proper precaution to guard against the consequences of the jerk which might have been expected; third, if plaintiff's husband was thrown from the train as alleged by the negligence of any one in charge of it, it was that of his fellow servant.

The reply was a general denial.

The record proper shows that the cause came to trial at the September term, 1897, of the circuit court of St. Louis county, when there was a verdict and judgment for plaintiff for $5,000, which were followed by motions for a new trial and in arrest of judgment, which were overruled, an affidavit for appeal filed by defendant, appeal granted and sixty days given defendant within which to file his bill of exceptions, all

of which orders were made on October 2, 1897, and during that term. The cause is here on that appeal.

There appears in the transcript filed in this court, what purports to be an order of the judge of that court in vacation, made on March 8, 1898, granting defendant leave to file his bill of exceptions on or before March 15, 1898, and, as if in pursuance of that order, there is what purports to be a bill of exceptions filed March 10, 1898. The time granted defendant by the court in which to file his bill of exceptions expired December 3, 1897.

I. It has been so often decided by this court that, when the period beyond the trial term granted by the court in which to file a bill of exceptions has expired, neither the court nor judge in vacation can extend it, and what purports to be a bill of exceptions filed in pursuance of such a void order will not be considered by this court, that we now deem it unnecessary to further discuss that subject. [State v. Apperson, 115 Mo. 470; Burdoin v. Trenton, 116 Mo. 358; State v. Mosley, 116 Mo. 545; Dorman v. Coon, 119 Mo. 68; Danforth v. Railroad, 123 Mo. 196; State v. Chain, 128 Mo. 361; State v. Schuchmann, 133 Mo. 111.]

We have nothing, therefore, to consider except what appears on the face of the record proper.

II. In the brief for appellant there are some objections made to the petition, as that it does not show that the dangers incident to the running of the train were known to defendant, and unknown to plaintiff's husband, nor that the injury was not within the ordinary risk of the employment, nor that he was exercising ordinary care. If those were matters that should have been stated in the petition and were not, they were fully supplied by the answer, which pleaded them as defenses, and issue thereon was joined in the reply.

The petition pleads with sufficient certainty that the plain-

tiff's husband was thrown off and killed by the negligence of
defendant's servants in charge of and handling the train;
whether or not it shows, as appellant contends, that the neg-
ligence complained of was that of fellow servants is perhaps
doubtful, but for the purpose of appellant's contention it may
be so conceded.

III.   It is contended in behalf of appellant that the record
proper in this case shows that the accident which resulted in
the death of the plaintiff's husband was caused by the negli-
gence of a fellow servant, and that therefore the defendant is
not liable because, first, the act entitled "An Act to define the
liabilities of railroad corporations in relation to damages sus-
tained by their employees, and to define who are fellow ser-
vants and who are not fellow servants, and to prohibit contracts
limiting liability under this act," approved February 9, 1897,
does not apply to a receiver in charge of a railroad, and, sec-
ond, that the act is unconstitutional.

Since we have nothing but the pleadings and the judg-
ment and orders of the court to look to, it is at least question-
able if the record justifies a consideration of those points, that
is, whether or not the plaintiff's judgment depends on the va-
lidity of the statute mentioned, and if so, whether or not its
validity was questioned in the trial court.   Defendant in his
answer does not plead the invalidity of the act, and if in his
motions or instructions he drew it in question, they are not be-
fore us.   The answer pleads affirmatively that the negligence
complained of was that of a fellow servant of plaintiff's hus-
band, and the reply denies that averment.   What the evidence
was on that point, we do not know, but the verdict on the
whole case was for the plaintiff.   But conceding that those
questions are in this record, they have both been authoritatively
answered.

1.   For his first proposition appellant relies mainly on

two decisions of the Supreme Court of Texas. In the first of those decisions (Turner v. Cross, 83 Texas 218), the statute of that State under consideration authorized an action for damages "when the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer, or hirer of any railroad, steamboat, stage-coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness, negligence or carelessness of their servants or agents." The court held that the receiver of a railroad was not liable under that statute, because he was not included in the lexicographical definition of owner, charterer or hirer. But the learned chief justice delivering the opinion approved a decision in an Ohio case (Meara v. Holbrook, 20 Ohio St. 137) which held a receiver liable under a statute which gave such a right of action against "any person or corporation through whose wrongful act, negligence," etc., death resulted, indicating that a receiver in such case possessed an individuality, within which he was liable, and which was not entirely merged in his artificial character as an arm of the court.

In the second case relied on, the Texas court, construing a statute of that State defining fellow servants, held that a brakeman in the service of the receiver of a railroad company was not "in the service of a railway corporation," within the meaning of the statute. [Campbell v. Cook, 86 Tex. 630.] But after reading those decisions and giving them the careful and respectful consideration that they deserve, we are not persuaded that they afford the correct interpretation of our statute. Indeed, if we should hold that our statute applies to servants engaged in operating railway trains in the control of railway corporations, but that it does not apply to servants engaged in operating trains of a railway corporation in the control of a receiver, we should thereby give to the statute that character of inequality before the law, and invidious classification

which appellant contends renders it repugnant to the Constitution of this State, and that of the United States.

It is one of the canons of construction, that if the statute is susceptible of two constructions, the one rendering it in harmony and the other in discord with the Constitution, we must give it that construction which will preserve its validity.

Section 2666, Revised Statutes 1889 is: "The term 'railroad corporation' contained in this chapter shall be deemed and taken to mean all corporations, companies or individuals owning or operating, or which may hereafter own or operate any railroad in this State." Appellant argues that that statute does not apply here, because it purports to define the term railroad corporation as contained in that chapter only; but the two statutes are *pari materia,* and as that just quoted was in the Revised Statutes when the Act of 1897 was enacted, they should be construed together.

In a case in which the receiver of a railroad company was sued for damages resulting from the negligence of servants in control of a train while the corporation was in the hands of another person as receiver, whom the defendant succeeded in the receivership, the Supreme Court of the United States used this language: "We agree with the Supreme Court of Illinois, that it was not intended by the word 'his' to limit the right to sue to cases where the cause of action arose from the conduct of the receiver himself or his agents; but that with respect to the question of liability he stands in place of the corporation. His position is somewhat analogous to that of a corporation sole, with respect to which it is held by the authorities that actions will lie by and against the actual incumbents of such corporations for causes of action accruing under their predecessors in office. . . . Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences and lia-

bilities are official and not personal, and judgments against him as receiver are payable only from the funds in his hands." [McNulta v. Lochridge, 141 U. S. 327, l. c. 331-2.]

In Peirce v. Van Dusen, 47 U. S. App. 339, it was held that the Ohio fellow servant law which in terms like ours uses only the designation "railroad corporation" applied also to a receiver of such corporation. The Texas cases referred to by appellant were there cited and relied on by the receiver, and also a Georgia decision to the same effect (Henderson v. Walker, 55 Ga. 481); but the court, per Mr. Justice HARLAN, said: "If the reasoning of the Georgia and Texas courts be applied to the Ohio statute it can not be held to embrace the employees acting under the receiver of a railroad corporation; but in our judgment the statute is applicable to actions against receivers of railroad corporations. To hold otherwise would be to subordinate the reason of the law altogether to its letter."

To the same effect also are Hornsby v. Eddy, 12 U. S. App. 404, and Central Trust Co. v. Wabash R. R., 27 Fed. Rep. 14.

In T. & P. R. R. v. Cox, 145 U. S., l. c. 601, the United States Supreme Court said: "In respect of liability, such as is set up here, the receiver stands in the place of the corporation."

In other words, the receivership is *pro haec vice* the corporation itself under the management of one man instead of that of a board of directors. To hold, therefore, that the statute applies to corporations of a certain kind under one management, and not to corporations of the same kind under another management, would be to create the inequality before the law to which we have above referred.

Since the argument of this cause, the Supreme Court of the United States has rendered a decision which the learned counsel for appellant has brought to our attention, in which it

is held that a. receiver operating a railroad is not liable to be prosecuted under the act of Congress entitled, "An Act to prevent cruelty to animals while in transit by railroad or other means of transportation within the United States," approved March 3, 1873. [United States v. Harris, 177 U. S. 305.] But that decision was distinctly put on the ground that it was a penal statute under which the prosecution was instituted, and, therefore, to be strictly construed. In the decision in that case the following language, from an early decision by the same court (United States v. Wiltberger, 5 Wheat. 76), was quoted as the principle on which it was founded: "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the right of individuals, and on the plain principle that the power of punishment is vested in the Legislature, and not in the judicial department. It is the Legislature, not the court, that is to define a crime and ordain its punishment." There is nothing in that decision that militates against the other Federal decisions above quoted.

This court, in Fullerton v. Fordyce, 121 Mo. 1. c. 8 and 9, per MACFARLANE, J., said: "Receivers who have exclusive charge and control of the property belonging to a railroad company, and of the management of its business, are bound to the same degree of care as the corporation itself would have been under the management of its board of directors, and are in like manner liable, in their official character, for injuries resulting from the negligence of themselves or their agents and employees. 'Being actually engaged in business, justice to those with whom they deal demands that they should be held to the same accountability, whether their liabilities arise in contract or in tort.'" [Beach on Receivers, sec. 717; Little v. Dusenberry, 46 N. J. Law, 641; High on Receivers, sec. 395; 2 Rorer on Railways, p. 898.]

In the case at bar, the individual holding the office of receiver is not the defendant, but the party really in interest is the corporation represented by the receiver. True, the word receiver is not contained in the Act of 1897, but we are warned by the maxim, *Qui haeret in litera, haeret in cortice,* that we must not always adhere to the letter. To do so in this case would violate the spirit of the statute and render it obnoxious to the Constitution of this State. We hold, therefore, that the Act of 1897 applies not only to railroad corporations, but also to receivers of such.

2. The next insistence is that the Act of 1897 violates sections 4, 10 and 30 of article 2, and section 53 of article 4 of the Constitution of this State, and the fifth and fourteenth amendments to the Constitution of the United States.

The objections to the act, in the light of our State Constitution, are of the same character as those urged against it in view of the Federal Constitution, except that it is claimed also to be a special law prohibited by section 53, article 4 of the State Constitution, and the reasons given for calling it a special law are the same that are given for calling it an infringement of the Federal Constitution, that it is class legislation, creating inequality before the law, so that the objection that the act singles out railroad companies and imposes on them a burden not imposed on other employers is the sum of all the objections.

This court has gone over this ground often in considering objections like these to similar statutes, and has always arrived at the same conclusion. In Humes v. Mo. Pac. Ry. Co., 82 Mo. 221, the constitutionality of section 42, chapter 36, of Wagner's Statutes, page 310, which imposed on railroad corporations liability for double damages for killing or injuring horses, cattle, etc., was challenged on the ground, among others, that it was in violation of section 53, article 4 of the Consti-

tution. In that case the court, per PHILLIPS, C., said: "It is further alleged against this statute that it is partial and special because it 'is directed against railroads alone, while no other common carriers are brought within its operations.' Had the Legislature deemed it essential to the protection of human life and private property, they would doubtless have extended the statute to carriers by coach and water. But as the class of property and human life, protected by this provision of the statute, is not exposed to a like peril incident to coach and water travel, the occasion and necessity for so extending the statute does not exist. Class legislation is not necessarily obnoxious to the Constitution. It is a settled construction of similar constitutional provisions that a legislative act which applies to and embraces all persons 'who are or who may come into like situations and circumstances' is not partial." This principle was iterated in Phillips v. Mo. Pac. Ry., 86 Mo. 540, in reference to the same and another statute, and reiterated in other cases. [State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Marion County Court, 128 Mo. 427.]

There is nothing that can be said against the Act of 1897, which could not have been said, or was not said, against the double-damage statute above mentioned, and which is not fully answered in the cases above referred to. We see nothing in the Act of 1897 in conflict with the Constitution of this State.

As to the contention that the act is in violation of the Constitution of the United States, we will only refer to decisions of the Supreme Court of the United States on that subject. The case of Humes v. Mo. Pac. Ry., above quoted, was taken on writ of error to that court, and it was there held that the statute was not obnoxious to the Federal Constitution. The grounds upon which its invalidity was urged by the railroad company are the grounds upon which the invalidity of the statute in question is urged in

the case at bar. That court said: "And there can be no rational ground for contending that the statute deprives it (the railroad company) of property without due process of law." And in discussing the second ground, the court said: "The objection that the statute of Missouri violates the clause of the fourteenth amendment which prohibits a State to deny to any person within its jurisdiction the equal protection of the laws, is as untenable as that which we have considered. The statute makes no discrimination against any railroad company in its requirements......There is no evasion of the rule of equality where all companies are subject to the same duties and liabilities under similar circumstances." [Mo. Pac. Ry. Co. v. Humes, 115 U. S. 512.]

In 1874, Kansas enacted a railroad fellow servant law almost identical with the first section of our Act of 1897. The validity of that act came in question before the Supreme Court of Kansas, when it was attacked on the same grounds that are urged in this case, but that court held the law valid. [Mo. Pac. Ry. Co. v. Mackey, 33 Kas. 298.] That case, like the Humes case above, was carried by writ of error to the Supreme Court of the United States, and it was there decided in the same way. The court said: "The only question for an examination, as the law of 1874 is presented to us in this case, is whether it is in conflict with clauses of the fourteenth amendment. The supposed hardship and injustice consist in imputing liability to the company, where no personal wrong or negligence is chargeable to it or its directors. But the same hardship and injustice, if there be any, exists when the company, without any wrong or negligence on its part, is charged for injuries to passengers. Whatever care or precaution may be taken in conducting its business, or in selecting its servants, if injury happen to the passengers from the negligence or incompentency of the servants, responsibility therefor at once

attaches to it.   The utmost care on its part will not relieve it
from liability, if the passenger injured be himself free from
contributory negligence.   The law of 1874 extends this doc-
trine and fixes a like liability upon railroad companies, where
injuries are subsequently suffered by employees though it may
be by the negligence or incompetency of a fellow servant in
the same general employment and acting under the same im-
mediate direction.   That its passage was within the compe-
tency of the Legislature, we have no doubt.   The objection
that the law of 1874 deprives the railroad companies of the
equal protection of the laws, is even less tenable than the one
considered.   It seems to rest upon the theory that legislation
which is special in its character is necessarily within the con-
stitutional inhibition; but nothing can be further from the fact.
The greater part of all legislation is special, either in the ob-
jects sought to be attained by it, or in the extent of its applica-
tion."   [Mo. Pac. Ry. Co. v. Mackey, 128 U. S. 205, l. c.
208-9.]   And at the same term the court sustained the validity
of a like statute of Iowa, attacked on the same grounds.   [M.,
etc., Ry. v. Herrick, 127 U. S. 210.]

The fourth section of the Act of 1897, declares that no
contract made between the railroad company and its employee
limiting the liability of the corporation for damages under that
act shall be valid, but that all such agreements shall be null
and void.   There was no attempt at a contract of that kind
in this case, and, therefore, we need not discuss that section,
but as it is said in the brief of appellant that that section renders
the whole act unconstitutional, we will call attention to the
fact that a similar provision is contained in the Iowa statute,
which the United States Supreme Court, in the case last cited,
holds to be a valid law.   Lest the allusion here made to sec-
tion 4 of this act be construed as casting a doubt on the va-

lidity of that section, we will add that no such purpose is intended.

The validity of a similar statute in Ohio was sustained in Peirce v. Van Dusen, supra, and that statute contained also a section to the effect that it should be unlawful for the railroad company to make any contract with its employee in contravention of its purpose.

And the Supreme Court of the United States, as late as December 11, 1899, sustained the validity of a statute of Indiana of like effect. [Tullis v. Railroad, 20 S. C. Rep. 136.]

We hold, therefore, that the Act of 1897 is not in violation of any of the provisions of the Constitution of the United States.

There is no error on the face of the record, and, therefore, the judgment of the circuit court is affirmed. All concur.