T. T. SUMNER and NANCY M. SUMNER, Appel-
lants, v. MISSOURI PACIFIC RAILROAD
COMPANY, Respondent.

**Kansas City Court of Appeals, November 21, 1910.**

1. **FELLOW-SERVANTS: Negligence.** Plaintiffs sued for damages
for the death of their son, a minor, employed as a pilot to con-
duct trains over newly repaired track after a washout. After a
freight had passed, deceased was found beside the track, with the
side of his head crushed, his elbow and foream mangled, and his
left hand burned. No one saw him at the time he was struck.
*Held*, that under the ruling in Strottman v. R. R., 211 Mo. 227
and Broadwater v. R. R., 212 Mo. 437, deceased being a fellow-
servant with the fireman and engineer whose negligence caused
the death, no cause of action survived.

2. ——:——. A cause of action against a railroad company,
to recover damages for the death of an employee whose death
was due to the negligence of a fellow-servant in the same em-
ployment, does not survive to the widow or children or other
relative of the deceased under the Fellow-Servant Act of 1891.

Appeal from Vernon Circuit Court.—*Hon. C. G.
Burton*, Judge.

AFFIRMED.

*J. B. Journey* and *J. B. Johnson* for appellants.

(1) The engineer and fireman on the train, that
struck Sumner, having been notified only a few mo-
ments before that he might be asleep on the track, re-
quired of them a vigilant look out for him, and it is a
fair inference that they either saw him in time to
prevent the injury, or failed to use ordinary care to
discover him, and in either event the defendant is lia-
ble. (2) A demurrer to the evidence admits every
fact, which the jurors may infer, if the evidence was
before them. Moore v. Transit Co., 194 Mo. 1, and
authorities there cited. (3) Where there are infer-

ences to be drawn from the facts proven, the case under proper instructions should be submitted to the jury. Bender v. Railroad, 137 Mo. 240; Connor v. Railroad, 181 Mo. 397. (4) In passing on the demurrer, the court is not at liberty to make inference of fact in favor of the defendant to countervail or overthrow inference of fact in favor of the plaintiff. Buesching v. Gas Co., 78 Mo. 219. (5) Neither can the court resort to guessing and conjecture to overcome the natural and probable effect of plaintiff's testimony. Shaw v. Bridge Co., 111 Mo. App. 278; Reed v. Railroad, 112 Mo. App. 575; Winkle v. Dry Goods Co., 132 Mo. App. 656; Yonge v. Railroad, 133 Mo. App. 141. (6) The jury may arrive at their verdict by reasoning from probabilities and making inferences, positive proof not required. Longan v. Mfg. Co., 120 Mo. App. 478; Camborn v. Railroad, 165 Mo. 543; Bensching v. Gaslight Co., 73 Mo. 219; Dakan v. Mercantile Co., 197 Mo. 238.

*Martin L. Clardy* and *Scott & Bowker* for respondent.

(1) If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result and if the evidence leaves it to conjecture, the plaintiff must fail in his action. Warner v. Railroad, 178 Mo. 134; Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Telegraph Co., 155 Mo. 346; Shore v. Bridge Co., 111 Mo. App. 278; Trigg v. Lumber Co., 187 Mo. 227. (2) When a part of the physical facts standing alone go to establish the averments of the petition, and the other physical facts tend to disprove those averments, a verdict based upon the physical facts alone cannot be permitted to stand. Oglesby v. Railroad, 177 Mo.

295.   (3)   Conjecture is not permissible in aid of either party.  Shore v. Bridge Co., 111 Mo. App. 288. (4)   It is not allowable to build one presumption on another, and thus make a cause of action.   Yarnell v. Railroad, 113 Mo. 580; Swearingen v. Railroad, 120 S. W. 773.   (5)   If a party's conduct is equally consistent with innocent or guilt, the presumption is in favor of innocent always.   Glover v. Insurance and Surety Co., 130 Mo. 186.   (6)   Servants who are engaged in working together at the same time and place, to a common purpose of same grade, neither of such persons being entrusted by such corporation with any superintendence or control over their fellow employees, are fellow-servants with each other.   R. S. 1899, sec. 2875; McDermott v. Railroad, 30 Mo. 115; Rohback v. Railroad, 43 Mo. 187; McGowan v. Railroad, 61 Mo. 528; Sherrin v. Railroad, 103 Mo. 378.

BROADDUS, P. J.—This is an action brought by plaintiffs, to recover damages for the death of their son, a minor, who was struck and killed by one of defendant's passenger trains on the morning of the 8th day of June, 1904, between the hours of five and six o'clock, at a point near where the defendant's road crosses the Marias des Cygnis river in Bates county.

Prior to June the 8th there were heavy rainfalls in that section of the country and the river had overflowed its banks and washed out parts of defendant's roadbed, which made it necessary to employ a force of men to repair the track and hold it in place.  From the third to the seventh day of the month no trains passed over the tracks because of its dangerous condition.  Among others employed for the purpose of looking after the safety of the track was the deceased. After the trains began to be operated over the road the deceased and O. H. Parker were required to meet and pilot all trains passing over that portion of the road.  On the morning of the 8th, at about five o'clock,

the deceased left Parker and went to Ovid, a station about three miles south of the river, to meet a freight, expected to arrive at that place, and to pilot it through the flooded district. The two had a resting place on the west side of the track about one hundred yards north of the bridge that spanned the river. Passenger train north-bound, known as No. 26, was to follow the freight through and in a short time after deceased left, Parker also started south to Ovid, to meet and pilot the passenger train. He had not gone far until he met the freight deceased was piloting. He climbed into the cab of the engine and found deceased asleep. After considerable effort he succeeded in waking him and directed him to go on to Butler and secure rest and sleep. He then got down from the cab and waited for the train to pass and after it passed he saw that deceased had gotten off and was at the resting place.

Parker then went on to Ovid, met the passenger train and piloted it across to about twenty-five yards south of the river. Before getting off the engine he cautioned the engineer and fireman to look out for the deceased ahead as he might be asleep on the track at the resting place. The train started up and proceeded at about the rate of speed of eight miles an hour. After it had passed the resting place he noticed the train porter and others on the back end of the last coach pointing and acting in an exciting manner. He immediately hastened to the resting place and found deceased injured. He was injured on the head and on the arm and his left hand was burned. He was lying on the west side of the track with his head to the north. The description of the extent of deceased's injuries is, that the side of his head was crushed, the elbow and forearm crushed and mangled, and his left hand was lying in a fire they had maintained for the purpose of drying their clothes. The place spoken of called the resting place was what was called "a hand-car set off," that is a convenient place where workmen

on the track would place handcars after taking them off the track. This was a small space somewhat elevated and leveled near the track.

There is a controversy as to whether there was or was not a handcar on this place at the time deceased was struck by the train.

During the detail of his evidence Parker was asked the question: "Was there anything to obstruct the view of the engineer and fireman from seeing Sumner if he had been on the track, or near it?" A. "Nothing, unless there had been a handcar set-off there." Q. "Unless there had been a handcar set-off there?" A. "Yes, sir." Q. "Well was there a handcar set-off there?" A. "Yes, sir."

During another part of his examination he was asked: "You say there was a handcar there?" A. "A handcar set-off." Q. "A handcar set-off?" A. "Yes, sir." He then proceeded to explain what a handcar set-off was.

Parker was the only witness as to the facts connected with the manner of Sumner's death. A locomotive engineer testified that a train similar to the one in question, at the rate of speed it was going, could be stopped in less than one hundred feet distance. At the close of plaintiff's evidence defendant submitted a demurrer to the case, which the court announced it would give to the jury; whereupon a non-suit was taken with leave to move to set it aside. The court refused to set aside the non-suit and plaintiff appealed.

The trial court was of the opinion that the only theory upon which the case could go to the jury was that deceased had gone to sleep at the place with his head or elbow upon the rail and was struck while in that position; but held that there was no testimony from which the jury could so find, and that there were other ways in which it could have occurred.

Whether the death of deceased was occasioned by the negligence of the engineer and fireman in charge of the engine or either of them is immaterial in view of what has been said in two late cases of the Missouri Supreme Court, viz.: Strottman v. Railroad, 211 Mo. 227, and Broadwater v. Railroad, 212 Mo. 437. It is held in both these cases, that, under the Fellow-Servant Act of 1897, R. S. 1899, sections 2873, 2874 and 2875; a cause of action against a railroad to recover damages for the death of an employee whose death was due to the negligence of a fellow-servant in the same employment, does not survive to the widow or children or other relatives of the deceased. The engineer and fireman were fellow-servants of the deceased and it follows if deceased came to his death by reason of their negligence or that of either of them, the cause of action did not survive. Affirmed. All concur.