## LODWICK LUMBER COMPANY v. ELBERT TAYLOR.

### Decided May 3, 1905.

**1.—Fellow Servant—Railroad—Lumber Mill.**

The statute making persons operating a railroad liable for injury to their servants by negligence of fellow servants (Batts' Rev. Stats., art. 4560ea; Act of January 18, 1897, sec. 1) embraces a lumber company operating an engine on its private track to haul logs to its mill and lumber from the mill to the public railway line; it is liable for injury to the servant coupling its cars from negligence of the engineer handling its locomotive.

**2.—Damages—Mental Suffering—Time Lost.**

Where physical injuries were not of such a nature as necessarily to imply mental suffering or loss of time, it was error to submit them to the jury as elements of damages in the absence of allegation that such damage had been incurred.

**3.—Charge—Damage—Use of Abbreviation "Etc."**

The addition to the elements of damage enumerated for consideration in the charge of the abbreviation "etc." gives the jury undue latitude, and is condemned.

Appeal from the District Court of Marion County. Tried below before Hon. P. A. Turner.

*F. H. Prendergast,* for appellant.—Taylor, when he was injured, was not in the employ of any person operating a railroad. He was the servant of the Lodwick Lumber Company, and that company was operating a tram road to haul logs to its sawmill, but it was not operating a railroad. In the connection in which the word railroad is used, it means the same as common carrier, a public highway, as the word is used in

the Constitution, article 10, section 2, and there is a reason why the law should specially protect persons operating railroads, because the public has an interest in the continuous operation of these agencies, and hence offers inducements and special protection and indemnification to those who engage in that dangerous service. Not so with the Lodwick Lumber Company. The public is not specially concerned in its continuous operation.

The court erred in the fourth clause of the charge in giving the measure of damages, in telling the jury to take into consideration the mental and physical pain, and the value of time lost, and depreciated ability to earn money, etc. This was an error, because there were no pleadings to allow recovery for such damages, and also there was no evidence to sustain the recovery for these items. Said charge was also error in using "etc.," which had the effect to allow the jury to give damages for other things not pleaded and not proven, and not enumerated in the charge. Pullman P. C. Co. v. Fowler, 6 Texas Civ. App., 761; Ft. Worth & D. C. Ry. v. Measles, 81 Texas, 478; O'Conner v. Smith, 84 Texas, 237; International & G. N. Ry. v. Simcock, 81 Texas, 504.

*R. R. Taylor,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—This suit was brought by the appellee in the District Court of Marion County against appellant for damages in the sum of $1,000, by reason of injuries alleged to have been received by him on October 2, 1903. Upon a trial before a jury, a verdict and judgment was rendered and entered in favor of appellee for the sum of $600.

Appellant's first assignment of error complains of the action of the court in refusing to give to the jury at its request the following special charge: "In this case it appears that the defendant company was not operating a railroad, and hence the statute of Texas, as to fellow servants has no application. If it was the negligence of the engineer that caused the plaintiff to be injured, and if he would not have been injured except for such negligence, then the plaintiff can not recover."

Appellee's injuries were received while he was attempting to couple a box car to a locomotive engine, in obedience to the directions of the engineer. Appellant's contention under the above assignment is that at the time the appellee was injured in its service, it was not operating "a railroad" within the meaning of those words, as used in article 4560f, Sayles' Revised Statutes. That article is as follows: "Every person, receiver or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained by any servant or employe thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver or corporation, by reason of the negligence of any other servant or employe of such person, receiver or corporation, and the fact that such servants or employes were fellow servants with each other, shall not impair or destroy such liability."

It appears from the record that the appellant is a corporation chartered for the purpose of manufacturing and selling lumber; that it owns a

sawmill, *logging* cars and a locomotive engine. It uses the engine and logging cars to haul logs on its tramways from the woods to its saw mill, and it also uses its engine to take box cars loaded with lumber from the mill to Harleton, a station on the main line of the Texas Southern Railroad. It appears that appellant operates its road and cars solely for its own use, and does not haul for the public. At the time of the accident appellant was operating its cars on a spur and was in the act of taking a box car or cars to Harleton, a distance of about 4 or 5 miles from the mill. Appellant's cars were operated by an engineer, a fireman and one or more brakemen. At the time of the accident, appellee was acting as brakeman, it being his duty to so act in the absence of the regular brakeman, and it appears from the record that the regular brakeman was absent at the time of the accident.

Appellant's insistence is that the words, "a railroad," as used in article 4560f, supra, relates only to such railroads as are common carriers, and that the reason for the enactment of this article in favor of employes of railroads was the interest the public had in the continuous operation of these agencies. We do not think appellant's contention is sound, nor is the reason it advances in support of same. We think the principle and paramount reason for the enactment of the article under consideration was the protection of the employes of persons or corporations operating railroads, by encouraging and making it to the interest of such persons or corporations to procure competent, safe and reliable persons to operate their cars, locomotives and trains. This evidently is the view of our Supreme Court as to the reason upon which said article was based. Judge Brown, delivering the opinion of that court in Railway Company v. Howard, 80 S. W. Rep., 229, uses this language: "If we consider the perilous position of men while actually engaged in the work of operating trains, and their attitude towards other employes, whether upon the same trains or not, which renders it very difficult to protect themselves against the negligence of others, the discrimination appears to be just as a provision for such employes and their families, if injured, and a wise policy tending to excite the diligence of their employers to procure safe and reliable persons to perform the work affecting the safety of train service."

The reason for the enactment of this statute excluded the idea that the Legislature did not intend it to apply to all railroads, but intended to limit its application only to such railroads as are common carriers. The service in the operation of railroads that are common carriers is no more dangerous than that in the operation of other railroads. We think the words "a railroad," are used in article 4560f, supra, in the same sense as the words "any railroad" are used in article 3017, Sayles' Revised Statutes, which provides as follows:

"An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: (1) When the death of any person is caused by the negligence or carelessness of the proprietor; owner, charterer or hirer of *any railroad*, steamboat, stagecoach or other vehicle for the conveyance of goods or passengers; or by the unfitness, negligence or carelessness of their servants or agents; when the death of any person is caused by the negligence or carelessness of the receiver, or receivers, or other person or persons in charge or

control of *any railroad*, their servants or agents; and the liability of receivers shall extend to cases in which the death may be caused by reason of the bad or unsafe condition of the railroad or machinery, or other reason or cause by which an action may be brought for damages on account of injuries the same as if said railroad were being operated by the railroad company."

The Court of Civil Appeals in the case of Bammel v. Kirby, receiver, 19 Texas Civ. App., 198, in construing the words, "any railroad," as used in said article 3017, Judge Williams delivering the opinion, uses this language: "Here the scope and purpose of the statute satisfy us that the Legislature intended no distinction between different kinds of railroads, and the language 'any railroad' repels the idea that a particular class of railroads was not intended to be included."

While the persons or corporations operating railroads which are not common carriers may not be entitled to the privileges which are possessed by those that are common carriers, they are liable for all injuries resulting from their negligence to property or persons by the operation of such railroads. (1 Wood's R. R. Law, sec. 2; 1 Elliott on Railroads, sec. 1.)

In treating of the construction to be placed upon words in Employers' Liability Act, it is stated in Elliott on Railroads, volume 3, section 1338, that where a municipal corporation hired a railroad train, and used it on a temporary track constructed on its own property, it was held to be engaged in operating a railroad, and that it was liable as the operator of a railroad to an employe who received an injury while riding on the train. And in support of this statement, a number of decisions of the Supreme Court of Massachusetts are cited.

The State of Massachusetts has a statute giving an employe in the service of a railroad company a right of action where, "by reason of the negligence of any person in the service of the employer, who has charge or control of any signal, switch, locomotive engine or train upon 'a railroad' the employe, or in case the injury results in death, the legal representatives of such employe, shall have the same right of compensation and remedies against the employer as if the employe had not been an employe of nor in the service of the employer, nor engaged in its work." (Mass. Stat. 1887, chap. 270, subdiv. 3, sec. 1.) And the Supreme Court of that State in passing upon the meaning of the words, "a railroad," as used in that statute, in the case of Coughlan v. City of Cambridge, 44 N. E. Rep., 218, say:

"At the time of the accident the defendant was engaged, by means of a locomotive and train and hands to manage the same, hired by it from the Fitchburg Railroad, in transporting gravel from one portion to another of certain premises held and owned by it in connection with its waterworks, for the purpose of improving the same. The track was laid by, and with the exception of the tires belonging to, the railroad, and was to be removed by it when the work was finished. The improvement which the defendant was engaged in making was for its own benefit and on its own premises, and when the relation of master and servant exists between employer and employe as it did here between the plaintiff and defendant, and others engaged in the work, we see no

reason why statute 1887, chapter 270, should not apply to the city or town. The track was a short and temporary affair, and the use of it and of the locomotive and cars was to continue only for a short time, but we think that it was a railroad within the meaning of the Act."

We conclude that the words "a railroad," used in said article 4560f apply to and include the railroad operated by appellant, as shown by the record in this case.

Appellant's sixth assignment of error complains of the following paragraph of the court's charge: "Should you find for plaintiff, you will assess his damages at such sum as will compensate him for the injury he has sustained, taking into consideration the nature and character of the injury, if any, the mental and physical pain, if any, he has suffered, the value of time lost, if any, depreciated ability to earn money, if any, etc."

Appellee does not in his petition allege any damages on account of mental or physical suffering or time lost. It might be that physical suffering would necessarily result from the injuries alleged and proven; but, in our opinion, mental suffering does not necessarily result from such injuries, and that should have been alleged. Neither was there any allegation of time lost on account of the injuries received. The injuries alleged are not of such a nature that loss of time would necessarily result therefrom.

We are also of opinion that it was error for the court to use the abbreviation "etc.," in the connection shown in the charge. The commonly accepted definition of "etc" is, "and so forth." This gave the jury the authority to consider, in connection with the matters enumerated by the court in its charge, other matters of a like character, leaving the jury to determine for themselves as to whether such matters were of a like character; and, in our opinion, the use of said abbreviation, in the connection stated, was calculated to mislead and confuse the jury.

We take occasion to call the attention of counsel for appellee to the condition of his brief, with respect to the manner in which it is attempted to be written. The brief is attempted to be executed with a typewriter, and the writing is blurred, dim, and practically illegible. A brief prepared in this manner is of no assistance whatever to this court, and is in violation of rule 37 for Courts of Civil Appeals, which requires the brief to be "plainly" written or printed. (Lumber Co. v. Adoue, 50 S. W. Rep., 131; Heath v. Hale, 27 S. W. Rep., 160; Stevens v. Taylor, 36 S. W. Rep., 1083.)

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*